*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 24, 2025
12:06 PM

Plaintiff-Appellee,

v

No. 372533
Genesee Circuit Court
LC No. 23-051361-FH

MARK WILLIAM FRUTCHEY,

Defendant-Appellant.

Before: BOONSTRA, P.J., and LETICA and RICK, JJ.

BOONSTRA, P.J. (*concurring*).

Although I am obliged to concur with the result reached by the majority, I am compelled to write separately to reiterate the concerns I expressed in my partial dissent in *People v Byczek*, 337 Mich App 173, 195-214; 976 NW2d 7 (2021) (BOONSTRA, P.J., concurring part and dissenting in part). In *Byczek*, I expressed my concern that MCL 750.543m(1)(a) (and its supposedly "narrow definition" of the term "act of terrorism") was being misapplied to broadly encompass "conduct that it would appear [the statute] never intended to cover." *Id.* at 199 (BOONSTRA, P.J., concurring part and dissenting in part). More specifically, I was concerned that courts ran the risk of "effectively jettisoning any pretense of adherence to the fundamental underlying presumption of the legislative proponents of the Michigan Anti-Terrorism Act, i.e., that 'prosecutors and juries would be judicious in their application of . . . criminal [charges arising under the act] so as to only include those individuals or organizations targeting a larger population with the intent of bringing down our government, severely crippling the ability of government to function efficiently, or to keep the population in a state of fear and terror.' " *Id.* at 213 (BOONSTRA, P.J., concurring in part and dissenting in part).

Those concerns are once again implicated in this case. While I recognize that the standard for binding over a defendant on felony charges is relatively low and conclude that the prosecution has cleared the bar in this case under current law, I believe it is an example of how MCL 750.543m(1)(a) continues to be interpreted and applied in an overly broad and, in my view, incorrect manner. In *Byzcek*, I noted that the language of MCL 750.543m(1)(a), when interpreted accurately and precisely, requires that the prosecution prove that the *threatened act*, not merely the *threat itself*, was "an act that is intended to intimidate or coerce a civilian population or

influence or affect the conduct of government or a unit of government through intimidation or coercion." *Byzcek*, 337 Mich App at 204 (BOONSTRA, P.J., concurring part and dissenting in part), quoting MCL 750.543b(a)(iii). MCL 750.543m(1) therefore, in my view, requires a close look at not only the communication alleged to be a threat, but what *act* was threatened by that communication and the intent behind it.

In this case, the prosecution has yet to establish what precisely the threatened act even was. I believe that a necessary element of a conviction under MCL 750.543m(1) in this case should be not only identifying the act threatened by defendant, but establishing that *the threatened act* was one that would coerce, intimidate, or influence as required by MCL 750.543b(a)(iii). Yet, as the law currently stands, the prosecution has no obligation to provide such proof—rather, it need only prove that the defendant had the "general intent to communicate a true threat," i.e., to communicate "a serious expression of an intent to commit an act of unlawful violence" where the threat itself (but not the threatened act) was made with an intent to intimidate or coerce. See *Byczek*, 337 Mich App at 190-191.

I am not alone in expressing concern regarding the current *mens rea* requirement (or lack thereof) in MCL 750.543m(1), as interpreted by this Court. The United States Supreme Court has held that, at a minimum, a showing that a defendant "consciously disregarded a substantial risk that his communications would be viewed as threatening violence" is necessary to convict a defendant for making threatening statements. See *Counterman v Colorado*, 600 US 66, 69; 143 S Ct 2106; 216 L Ed 2d 775 (2023). In light of *Counterman*, this Court recently held that MCL 750.543m(1) was facially unconstitutional because it does not require any proof of a defendant's subjective mental state regarding his communications. See *People v Kvasnicka*, ____ Mich App ___; ___ NW3d ___ (2025), vacated and remanded ___ Mich ___ (2025); see also *Byczek*, 337 Mich App at 183-184; see also *People v Osantowski*, 274 Mich App 593, 603; 736 NW2d 289 (2007) (holding that MCL 750.543m(1) only requires that a defendant have the "general intent to communicate a true threat").

Although the Michigan Supreme Court recently vacated and remanded *Kvasnicka* to this Court, it did not find any of this Court's reasoning in *Kvasnicka* regarding MCL 750.543m(1)'s constitutional infirmity to be erroneous, nor did it address how *Counterman* would apply to our interpretation of the statute's language. It also did not hold that MCL 750.543m(1) was constitutional in its current construction—rather, the Court tasked this Court with reevaluating the constitutionality of the statute in light of MCL 750.543z (providing that "a prosecuting agency shall not prosecute any person or seize any property for conduct presumptively protected by the first amendment to the constitution of the United States in a manner that violates any constitutional provision") and the constitutional-doubt canon, see *Sole v MEDC*, 509 Mich 406, 419-420; 983 NW2d 733 (2022) ("When the validity of an act . . . is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.") (quotation marks and citations omitted). Additionally, the Supreme Court instructed this Court to consider whether an appropriate limiting construction could be adopted to remedy any constitutional infirmity in the statue. *Id.* at ___.

It remains to be seen whether MCL 750.543m(1) will be found to pass constitutional muster or what limiting construction might be necessary for it to do so. And the issues involved

in *Kvasnicka* are not precisely the same as the issues raised by defendant in this case. But I remain convinced that greater precision in our interpretation of MCL 750.543m(1) is necessary to prevent an overly broad application of the statute to conduct that it was never intended to cover, and to prevent a significant chilling effect on free speech.


/s/ Mark T. Boonstra